# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

BRANDON GARWOOD,

       Plaintiff,

      v.                         **MEMORANDUM OF LAW & ORDER**
                                     Civil No. 22-cv-1918 (MJD/DLM)

SUN LIFE ASSURANCE
COMPANY OF CANADA,

       Defendant.

Brenna Karrer, Zachary Schmoll, Fields Law Firm, Counsel for Plaintiff.

Amy Elizabeth Erickson, Brooke Robbins, Carrie E. Josserand, Richard N. Bien, Lathrop GPM LLP, Counsel for Defendant.

## I.    INTRODUCTION

This case arises out of Defendant Sun Life Assurance Company of Canada's ("Sun Life") denial of ERISA long term disability benefits to Plaintiff Brandon Garwood because of events that occurred on April 23, 2020.  Before the Court are three motions: Sun Life's Amended Motion in Limine to Exclude Extra Record Evidence (Doc. 37) and the Parties' cross motions for summary judgment (Docs. 29 and 38).  For the reasons addressed below, Sun Life's Amended Motion

in Limine to Exclude Extra Record Evidence is denied as moot in part and

granted in part, Sun Life's Motion for Summary Judgment is granted, and

Garwood's Motion for Summary Judgment is denied.

## II.     BACKGROUND

### A.     The Events of April 23, 2020

The facts described below are derived from a warrant that was written and

sworn to by an officer who reviewed video footage from the incident and

interviewed several individuals who were at the scene.  (Administrative Record

("AR") at 247-48, 251.)

In Keller, Texas, Garwood, without invitation or notice, entered the

unlocked home of his former girlfriend and roommate, Mary Graham, around

10:23 p.m. to retrieve personal property that he had left in her garage.  (Id. at

248.)  Garwood told Graham that he wanted to check on his property because

Graham's new roommate, Brandin Foos, threatened to throw his property out

onto the street.  (Id.)  Graham saw Garwood and asked him to leave because she

was worried about a confrontation between Garwood and Foos.  Graham noted

that Garwood "phoned Foos wanting to fight him."  (Id.)  Foos also revealed that

Garwood texted a photo of himself in the garage with the message, "You think you're so tough?"  (Id.)  Garwood refused to leave, and Graham recruited a neighbor to help calm down Garwood.  (Id.)

Foos, who was spending time elsewhere that night, returned home, accompanied by approximately five other people on motorcycles, including George Hunnicutt and Michael Voorhies.  (Id. at 247-48, 251.)  A "heated [verbal] argument quickly" ensued between Garwood and Foos.  (Id.)

Garwood then went out to his truck, which was parked on the street. According to both Foos and Hunnicutt, the group thought Garwood was leaving. (Id. at 249.)  Instead, "Garwood's truck immediately and rapidly turn[ed] into the driveway, striking the motorcycle occupied by Voorhies, and knocking it down." (Id. at 251.)  The warrant provides that footage captured by a security camera showed Garwood's white truck "rapidly turning from where it was parked in the street into the driveway where it made contact with a motorcycle."  (Id. at 249.) The impact with the motorcycle was audible on the footage.  (Id.)  Hunnicutt told an officer in a Mirandized interview that Garwood was "cutting the wheel of his truck very hard and gunned it coming at him and his friends."  (Id.)  People ran

out of the path of the truck.  (Id.)  Hunnicutt, who was on the grass, fired a

handgun toward the driver's side of the truck.  (Id.)  Seven muzzle flashes were

seen on video cameras that recorded the events and seven shots were heard.  (Id.

at 247-50.)

Following the incident, Garwood was transferred to a hospital with

multiple gunshot wounds, where it was determined that he had lower extremity

paraplegia.  (Id. at 257-59, 354, 402, 413, 430, 439.)  Garwood was later charged

with aggravated assault with a deadly weapon, a second-degree felony.  (Id. at

231, 247.)  The charge was eventually dismissed based on prosecutorial

discretion.  (Id. at 519.)

### B.     The Plan Language

Garwood's employer, PIE Consulting and Engineering, Inc., established a

long-term disability benefit plan and purchased group long-term disability

insurance to, in part, fund benefits under the Plan ("the Plan").  The Plan also

provides for short-term disability benefits.  The Plan is an ERISA welfare benefit

plan, and Garwood is a participant of the Plan.  (Doc. 1 ("Compl.") ¶¶ 10-11.)

Under the Plan, Sun Life was granted sole discretionary authority to interpret the

terms of the Plan and to make all claim determinations.   (AR at 211.)

The Plan includes the following information:

Policy Effective Date:      January 1, 2020

.   .   .

Issue State:                    Colorado

This Certificate is part of the Group Insurance Policy.

This Certificate is governed by the laws of the Issue State shown
above unless otherwise preempted by the federal Employee
Retirement Income Security Act ("ERISA").

(Id. at 2; Compl. Ex. A at 1).)

Initially, Garwood applied for and received short-term disability benefits

for the full short-term disability period.  (AR at 46-48, 153, 167.)  Garwood later

applied for long-term disability ("LTD") benefits that were denied by Sun Life

under an exclusion clause of the Plan ("the exclusion"), which states:

No benefit is payable to you under the Policy for any Period of
Disability or other loss for which benefits are payable that is caused
by, contributed to in any way or resulting from:

.   .   .

your committing or attempting to commit an assault, felony, or
other criminal act[.]

5

(Id. at 19, 470; Compl. Ex. A at 1.)  Specifically, Sun Life found that Garwood's

disability was a result of his actions on April 23, 2020.  (AR at 471-72.)  Garwood

was offered an opportunity to present evidence to the contrary, however, he did

not do so.  (Id.)  After exhausting all administrative remedies, Garwood filed this

case, challenging the denial of LTD benefits by Sun Life and seeking damages

under 29 U.S.C. § 1132(a)(1)(B).  (Compl. at 6.)  The Parties now cross-move for

summary judgment and Sun Life moves to exclude extra-record evidence that

Garwood attempts to bring in as part of his motion.

## III.    DISCUSSION

### A.    Standard of Review in this ERISA Case

#### 1.    General Standard of Review

Under ERISA, a plan beneficiary has the right to judicial review of a

benefits determination.  See 29 U.S.C. § 1132(a)(1)(B).  "[A] denial of benefits

challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard

unless the benefit plan gives the administrator or fiduciary discretionary

authority to determine eligibility for benefits or to construe the terms of the

plan."  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  "When an

ERISA plan grants the administrator discretionary authority to determine

6

eligibility for benefits or to construe the terms of the plan, courts review the administrator's benefit decisions for an abuse of that discretion."  Khoury v. Group Health Plan, Inc., 615 F.3d 946, 952 (8th Cir. 2010) (citation omitted).

"Under the abuse of discretion standard, [the Court] look[s] to see whether [the plan administrator's] decision was reasonable.  In doing so, [the Court] must determine whether the decision is supported by substantial evidence, which is more than a scintilla, but less than a preponderance."  Willcox v. Liberty Life Assurance Co. of Boston, 552 F.3d 693, 700 (8th Cir. 2009) (citation omitted).

> **2.    Whether Discretionary Authority Was Granted to Sun Life in the Plan and What Standard of Review Applies to the Court's Review of the Administrative Record**

> **a)    The Parties' Arguments**

Garwood argues that because the Plan specifies that Colorado law governs, any discretionary authority the Plan grants to Sun Life is invalid pursuant to Colo. Rev. Stat. Ann. § 10-3-1116(2), which states:

> An insurance policy, insurance contract, or plan that is issued in this state and that offers health or disability benefits shall not contain a provision purporting to reserve discretion to the insurer, plan administrator, or claim administrator to interpret the terms of the policy, contract, or plan or to determine eligibility for benefits.  If an insurance policy, contract, or plan contains such a provision, the provision is void.

7

Thus, despite the grant of discretionary language in the Plan, Garwood argues that Colorado law prohibits clauses such as the one at issue here.  (Doc. 43 at 2.)  Garwood asserts that "[t]he United States Supreme Court and the District of Colorado both make it clear that this statute is not pre-empted by ERISA." (Id. (citing Kentucky Ass'n of Health Plans, Inc. v. Miller, 538 U.S. 329, 342 (2003); McClenahan v. Metro. Life Ins. Co., 621 F. Supp. 2d 1135, 1141 (D. Colo. 2009), aff'd, 416 F. App'x 693 (10th Cir. 2011)).)  Therefore, Garwood argues that the applicable standard of review is de novo, and this Court should decide this case under the Federal Rules of Civil Procedure 39(b) and 52(a)(1) as a bench trial on the Administrative Record.[1] (Id. (citing Avenoso v. Reliance Std. Life Ins. Co., 19 F.4th 1020, 1026 (8th Cir. 2021)).)

---

[1] Fed. R. Civ. P. 39(b) provides, in relevant part, "Issues on which a jury trial is not properly demanded are to be tried by the court."

Fed. R. Civ. P. 52(a)(1) provides, in pertinent part, "In an action tried on the facts without a jury . . . the court must find the facts specially and state its conclusions of law separately."

Sun Life responds to Garwood's arguments mostly by relying upon ERISA's usual scheme of having courts review denials of benefits under the deferential arbitrary and capricious standard of review when a plan gives the administrator discretionary authority to determine benefit eligibility.  (Docs. 35 at 15; 42 at 15 (citations omitted).)  However, should the Court find that the standard of review is <u>de novo</u>, Sun Life agrees with Garwood that the Court should review this motion under Rules 39(b) and 52(a)(1).  (Doc. 35 at 21 (citing <u>Avenoso</u>, 19 F.4th at 1025).)

**b)      Analysis**

Because the Court reaches the same decision no matter what standard of review applies, the Court assumes, without deciding, that the standard of review is <u>de novo</u>.  <u>See</u> <u>Goodman v. Guardian Life Ins. Co. of Am.</u>, 611 F. Supp. 3d 1149, 1154 (D. Colo. 2018) (finding Colo. Rev. Stat. § 10-3-1116(2) is not preempted by ERISA, noting that Tenth Circuit has not addressed the issue, and applying a <u>de novo</u> standard of review).

Although both Parties filed motions for summary judgment, because the Court is applying a <u>de novo</u> standard of review, the Parties now seek judgment

on the administrative record pursuant to Rules 39(b) and 52(a)(1).  See <u>Sloan v.</u>

<u>Hartford Life & Accident Ins.</u>, 475 F.3d 999, 1001, 1003 (8th Cir. 2007) (affirming

judgment "on the briefs and a stipulated fact record" in an ERISA-benefits case).[2]

The Court will therefore "exercise its factfinding function" and "decide the case

on the administrative record."  <u>Avenoso</u>, 19 F.4th at 1026.  In other words, the

Court can weigh evidence, make credibility determinations, and make findings

on disputed factual questions.  <u>See id.</u> at 1024, 1026.

### B.   Sun Life's Motion in Limine to Exclude Extra Record Evidence

Having considered the proper standard of review, the Court turns to Sun

Life's Motion in Limine to Exclude Extra Record Evidence.  Sun Life moves to

exclude any evidence (1) that Garwood was awarded social security disability

benefits, and (2) that Garwood was merely executing a "three-point turn" when

he drove into the driveway and hit the motorcycle.  (Doc. 35 at 10-13.)

---

[2] The Court notes that the Parties do not seek an in-court bench trial.  Both Parties
include prayers for immediate relief in their briefs.  (<u>See, e.g.</u>, Doc. 33 at 17-18
(Garwood seeks "retroactive benefits payment, a declaratory judgment of
ongoing benefits . . . , interest, and attorney's fees and costs"); Doc. 35 at 25 (Sun
Life seeks summary judgment in its favor or, in the alternative, judgment on the
administrative record and dismissal of the complaint with prejudice).)

Upon a <u>de novo</u> review, the district courts should not function as "substitute plan administrators."  <u>Brown v. Seitz Foods, Inc., Disability Ben. Plan</u>, 140 F.3d 1198, 1200 (8th Cir. 1998).  Consequently, the district court should restrict its review to evidence that was before the administrator at the time it made the final decision.  <u>Id.</u> (citations omitted).  Supplementation of the administrative record is allowed in exceptional circumstances.  <u>Id.</u>  A plaintiff seeking additional evidence from outside of the administrative record bears the burden in establishing its admissibility.  <u>Id.</u>  A plaintiff who offers no explanation for not providing the evidence in a timely manner that he now seeks to have the court consider does not satisfy the good cause standard.  <u>Id.</u>

First, evidence regarding Garwood's award of social security disability benefits is irrelevant as to whether Garwood violated the exclusion.  This part of the motion, therefore, is denied as moot.

Second, Garwood does not provide good cause for why he did not submit evidence about his alleged "three-point turn" during the administrative review process.  Garwood argues that the warrant is one-sided and does not consider his version of events.  However, that did not preclude Garwood from presenting his

version of the April 23 incident to Sun Life with his initial application for LTD

benefits or with his appeal.  This evidence existed on the day of the incident.

Garwood was offered the opportunity to provide this information when

his appeal rights were explained to him, and he was on notice that he had the

obligation to do so from the time he was enrolled in the Plan.  (See AR at 22, 212,

471 (telling Garwood he needed to explain the reasons why he disagreed with

the decision to deny him LTD benefits and explaining that he "may also include

new information—medical or otherwise—that [he felt supported his] disability

claim").)  Instead, this theory was first raised during this litigation, which makes

the argument appear as something designed for litigation purposes.  Garwood

does not explain why this evidence was not previously presented.  Thus,

Garwood fails to establish good cause for why he did not submit this evidence in

a timely manner.  See Brown, 140 F.3d at 1200.

Finally, Sun Life asserts that it provided Garwood a second administrative

appeal opportunity to provide this information.  Sun Life, however, is wrong.

The denial letter provided that "[t]he administrative remedy of appeal under this

12

policy is now exhausted and the administrative record of the claim is closed."

(AR at 532.)  This, however, does nothing to alter the Court's analysis.

Therefore, the motion in limine to exclude this evidence is granted and this

evidence will not be considered.

### C.   The Parties' Cross-Motions for Judgment on the Administrative Record

#### 1.   Findings of Fact

Under Rule 52(a)(1), the Court must "find the facts specially."  The Court

adopts the facts detailed in Section II of this Order, Background, <u>supra</u>, as its

Findings of Fact.  The following discussion will explain the Court's Conclusions

of Law and reasons therefore.

#### 2.   Conclusions of Law

The main dispute in this case is whether the Plan's LTD benefits exclusion

applies.  Garwood contends that the exclusion does not apply, and Sun Life

maintains otherwise.

The exclusion provides to an insured that:

No benefit is payable to you under the Policy for any Period of
Disability or other loss for which benefits are payable that is caused
by, contributed to in any way or resulting from:

.  .  .

your committing or attempting to commit an assault, felony, or
other criminal act[.]

(AR at 19).  Under Texas state law,

(a) A person commits an offense if the person:

> (1)   intentionally, knowingly, or recklessly causes
>        bodily injury to another . . .;
> (2)   intentionally or knowingly threatens another
>        with imminent bodily injury . . .; or
> (3)   intentionally or knowingly causes physical
>        contact with another when the person knows or
>        should reasonably believe that the other will
>        regard the contact as offensive or provocative.

Tex. Penal Code Ann. § 22.01 (Assault).  If a person commits an offense defined

in § 22.01 and the person uses a deadly weapon during the commission of the

assault, the assault is a felony of the second degree.  See id. § 22.02 (Aggravated

Assault).

Garwood maintains that the exclusion does not apply for two reasons:

(1) that the record lacks any evidence that he intended to commit an assault, and

(2) that the prosecutor's dismissal of the criminal charge proves there was no

evidence that Garwood committed or attempted to commit an assault.  These

arguments are addressed in turn.

14

### a)    Whether Garwood had the Necessary Intent to Commit Aggravated Assault

Garwood argues that the exception does not apply because the record

lacks any evidence that he attempted to commit an assault in violation of Texas

law.  Garwood asserts that in cases where similar exclusions applied, "the crime

alleged was black and white, and all elements of the crimes were clearly proven."

(Doc. 41 at 3-4 (citing Allstate Ins. Co. v. Burrough, 120 F.3d 834, 836-37, 840 (8th

Cir. 1997) (gun owner's insurance exclusion applied to deny coverage when his

child, who provided gun to another child who accidentally discharged gun and

injured a third child could not be charged with crime of furnishing firearm to

minor); Boyer v. Schneider Elec. Holdings, Inc., 993 F.3d 578, 580-82 (8th Cir.

2021) (insurance company properly relied on evidence in police report that

included multiple witness statements to apply a crime exclusion when deceased

insured speeded, passed illegally, lost control of his car, hit tree, and died in

resulting accident); Allstate Ins. Co. v. Carmer, 794 F. Supp. 871, 872-73 (S.D. Ind.

1991) (minor insured's act of supplying alcohol to second minor fell under policy

exclusion denying coverage for bodily injury resulting from criminal act or

omission "regardless of whether the insured person is actually charged with, or

convicted of, a crime" though minor could not be criminally charged when second minor's drinking led to car accident with injuries); <u>Redeaux v. S. Nat. Life Ins. Co.</u>, 424 F. App'x 271, 273 (5th Cir. 2011) (exclusion "for a loss which in any way results from injury or death occurring as a result of the commission of a crime or the attempt to commit a crime" applied when insured with posthumous BAC twice the legal limit could not be prosecuted for DWI); <u>Allstate Ins. Co. v. Raynor</u>, 969 P.2d 510, 516-17 (Wash. Ct. App. 1999) (exclusion for "bodily injury . . . from the . . . criminal acts of an insured person" applied when the insured could not be charged because he killed himself after killing his neighbors).)  In other words, Garwood contends the record lacks any evidence of an assault or an attempt to commit an assault—specifically, Garwood argues the record lacks evidence on whether he acted "intentionally or knowingly."  (<u>Id.</u>)

Sun Life responds that Garwood was injured in an altercation that he instigated when he deliberately drove his truck into the group of people in the driveway and the shots Hunnicutt fired were a reaction to Garwood's action. (<u>See</u> Doc. 35 at 19.)  Therefore, it was foreseeable that Garwood's commission of an assault would bring on some form of retaliation.  (<u>Id.</u>)

16

In Texas, the requisite criminal intent to commit the offense of aggravated assault is "knowingly or intentionally." See Knight v. State, 406 S.W.3d 578, 587 (Tex. Crim. App. 2013). "A person acts intentionally, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to cause the result. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result." Aaron v. State, No. 02-12-00029-CR, 2013 WL 4507861, at *2 (Tex. Crim. App. Aug. 22, 2013) (addressing aggravated assault causing serious bodily injury) (citing Tex. Penal Code Ann. § 6.03(a), (b)). "Intent may be inferred from circumstantial evidence such as the appellant's acts, words, and conduct. Intent may also be inferred from the use of a deadly weapon, unless it would not be reasonable to infer that death or serious bodily injury could result from use of the weapon." Darkins v. State, 430 S.W.3d 559, 564 (Tex. Crim. App. 2014).

Here, circumstantial evidence in the record exists from which the Court infers that Garwood intended to commit assault. The warrant states that videos showed Garwood "quickly turn[ing] into the driveway" (AR at 250), "rapidly turning [his truck] from where it was parked in the street into the driveway

17

where it made contact with a motorcycle," (Id. at 247), and "immediately and rapidly turn[ing] into the driveway, striking the motorcycle occupied by Voorhies, and knocking it down" (Id. at 251).  Garwood was leaving a verbal altercation in that driveway.  He knew the people and motorcycles were still there.

The Court finds that this satisfies the definition of "intentionally or knowingly threatens another with imminent bodily injury."  Tex. Penal Code Ann. §§ 22.01; 22.02.  This evidence in the administrative record shows that Garwood was aware that his conduct was reasonably certain to cause the result because no other possible result could have been foreseen.

Additionally, the record lacks any evidence to the contrary of this finding.  Thus, the Court concludes that Garwood acted intentionally and knowingly with respect to driving into the driveway toward a group of people before being stopped by running into a motorcycle.

18

**b)** **Whether the Prosecutor's Dismissal of the Charge in the Criminal Case Meant that There was No Evidence that Garwood Committed or Attempted to Commit an Assault**

Garwood also argues that the prosecutor's dismissal of the charge in the criminal case meant that there was no evidence that he committed or attempted to commit an assault. (Doc. 43 at 5.) Garwood contends that Sun Life did not attempt to get all the facts of his claim beyond a cursory and irrelevant background investigation into his address, criminal history, and social media. (Id.) Garwood also asserts that although Sun Life relied on the warrant, the warrant is not an accurate reflection of the facts of what occurred on April 23, 2020. (Id.)

Sun Life responds that the prosecutor's decision not to pursue the charge has no bearing on the application of the exclusion because the exclusion does not require that the insured be prosecuted or convicted. (Doc. 35 at 19.) In addition, Sun Life maintains that Garwood offered no evidence during his appeal that would disprove the facts articulated in the warrant affidavit, particularly that he committed an assault with his vehicle. Sun Life notes that the only document

Garwood submitted with his appeal said that the charge was dropped due to "prosecutorial discretion," without further explanation.  (Id.)

The document dismissing the criminal charge against Garwood was a checkbox form containing 11 options, none of which supports the proposition that Garwood argues here.  (AR at 519.)  Thus, the fact that the charge was dropped is immaterial to the determination of whether the exclusion applies.

The exclusion focuses on the actions taken by Garwood and applies even if a criminal charge is not brought against him.  Even Garwood's own cited cases applied similar exclusions when criminal charges were not filed.  See Redeaux, 424 F. App'x at 273 (holding that "[t]he failure of the state criminal justice system to prosecute an individual by no means constitutes an affirmative finding that the individual is absolved of any crime" when no charges filed when posthumous BAC was twice the legal limit); Boyer, 993 F.3d at 582 (similar reasoning when adult driver died after speeding and illegally passing); Raynor, 969 P.2d at 516-17 (similar reasoning applied to homeowner's beneficiary when homeowner killed neighbors and himself.)  Although Garwood argues that the crimes in those cases were "black and white," the Court has found that Garwood

satisfied the "intentionally or knowingly" element of the statute under which he was charged, the element that was at issue here.

The Court concludes that the dismissal of the charge against Garwood does not constitute evidence that Garwood did not commit or attempt to commit an assault on April 23, 2020.

### c)    Whether the Exclusion Applies

Having addressed Garwood's arguments, the Court turns to the question of whether the Plan's exclusion applies.   The Court finds that the warrant is reliable.  The warrant was written by and sworn to by an officer of the law. Nothing indicates that the officer's credibility is in question.  The warrant establishes that Garwood entered Graham's home unannounced and refused to leave when asked; threatened Foos, as confirmed by a text message (AR at 247); confronted Foos and his friends despite having the opportunity to leave (Id. at 249); returned to his truck, which was on the street, and instead of driving away, turned the truck into the driveway, drove towards the group of people gathered there and hit a motorcycle (Id. at 249).  These actions were caught on several surveillance videos.  (Id. at 247-50.)  The truck struck a motorcycle that Voorhies

was sitting on, and the impact was audible on video.  (Id.)  The videos also

showed people running away from the path of the truck.  (Id. at 248-50.)  Thus,

the record supports the conclusion that Garwood instigated the situation and

attempted to commit or committed an assault.  This is in concert with cases that

have applied similar exclusions.  See, e.g., Weisenhorn v. Transamerica

Occidental Life Ins. Co., 769 F. Supp. 302, 302-04 (D. Minn. 1991) (holding that "it

is the decedent's total conduct which determines the nature of the offense

committed").   Although Garwood was offered an opportunity to present

evidence to the contrary, he failed to do so.  (AR at 471-72.)

    In summary, after conducting a de novo review of the administrative

record, the Court concludes that the exclusion applies and, therefore, Sun Life's

decision to deny Garwood LTD benefits was supported by the record.

Accordingly, Garwood's motion for summary judgment, which is now

interpreted as a motion for judgment on the administrative record, is denied and

Sun Life's motion for summary judgment, which is now interpreted as a motion

for judgment on the administrative record, is granted.

**IV.    ORDER**

Based upon the files, records, and proceedings herein, **IT IS HEREBY**

**ORDERED**:

1. Plaintiff's Motion for Summary Judgment, which is interpreted as a

    Motion for Judgment on the Administrative Record **[Doc. 29]** is

    **DENIED**;

2. Defendant's Motion in Limine to Exclude Extra Record Evidence **[Doc.**

    **37]** is **DENIED as moot in part and GRANTED in part**;

3. Defendant's Motion for Summary Judgment, which is interpreted as a

    Motion for Judgment on the Administrative Record **[Doc. 38]** is

    **GRANTED**; and

4. Plaintiff's Complaint **[Doc. 1]** is **DISMISSED WITH PREJUDICE**.

    **LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:   March 26, 2024                                    s/Michael J. Davis
                                                           Michael J. Davis
                                                           United States District Court